UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60113-CR-MARRA/VALLE

UNITED STATES OF AMERICA

v.

JASON GRAMA,

    Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney=s Office for the Southern District of Florida (Athis Office@) and defendant JASON GRAMA (hereinafter referred to as the defendant@), enter into the following agreement:

1. The defendant agrees to plead guilty to Count 1 of the Indictment which charges him with conspiracy to commit healthcare fraud, in violation of Title 18, United States Code, Section 1349 and 1347.

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter ASentencing Guidelines@). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence

under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines= advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that as to Count 1, the Court may impose a sentence of up to ten (10) years, followed by a term of supervised release of up to 3 years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant=s failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant=s background. Subject only to the express terms of any agreed-upon sentencing

recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant=s offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant=s recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant=s offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States, however, will not be required to make these recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:\

Loss: That the relevant amount of actual, probable or intended loss from the offenses committed by defendant is between $250,000 and $550,000, under Section 2B1.1(b)(1)(G) of the Sentencing Guidelines, resulting in a 12-level increase. (total loss attributable to defendant is $298,165.17).

8. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant=s attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court=s decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

9. The defendant recognizes that pleading guilty may have consequences with respect to the defendant=s immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant=s attorney or the Court, can predict to a certainty, the effect of the defendant=s conviction on the defendant=s immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that the plea may entail, even if the consequence is the defendant=s automatic removal from the

4

United States.

10. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations or understandings.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

10/14/21
Date

By: *[signature]*
Laurence M. Bardfeld
Assistant United States Attorney

9/29/21
Date

By: *[signature]*
Roy Kahn
Counsel for Jason Grama

9/29/21
Date

By: *[signature]*
Jason Grama
Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-60113-CR-MARRA

UNITED STATES OF AMERICA

vs.

JASON GRAMA,

    Defendant.
_____/

## FACTUAL PROFFER

If this case were to proceed to trial, the United States would prove beyond a reasonable doubt:

Defendant JASON GRAMA (GRAMA) was an owner of Physician Choice Pharmacy, LLC, a licensed retail pharmacy located in Broward County, Florida. Physician Choice Pharmacy was owned by defendants HOWARD FRANK, JASON GRAMA, and another individual.

Physician Choice Pharmacy dispensed diabetic test strips. For each of the years 2013 through 2016, Physician Choice Pharmacy entered into provider agreements with various Pharmacy Benefit Managers. Under the terms of the provider agreements between the healthcare benefit plans and Physician Choice Pharmacy, the owners were required to submit claim information, including the NDC, that was accurate and complete. The pharmacy owners further agreed that claims submitted utilizing an NDC other than the NDC of the dispensed item were not eligible for reimbursement. As a pharmacy owner, defendant GRAMA was required to submit accurate and complete claim information.

Co-defendants MOKBEL, FRANK and HALLON, acquired non-retail and foreign diabetic test strips through various sources at significantly less cost than the retail value. Co-defendants

also acquired invoices, purchase orders, and shipping records that accompanied the non-retail and diabetic test strips. Co-defendants and some of their employees altered invoices, purchase orders, and shipping records of the non-retail and foreign diabetic test strips to deceive subsequent buyers about the legitimacy of the supply chain and to deceive auditors and inspectors.

Co-defendants and some of their employees created false NDC numbers, altered original NDC numbers, altered bar codes, altered labeling, altered accompanying documentation and concealed the fact that the products were non-retail and foreign diabetic test strips. The alterations made by the co-defendants and some of their employees included: (1) removing the original patients' prescription labels from a box of prescription diabetic test strips by "washing" them with cotton balls, Q-tips, rags with paint thinner, finger nail polish remover, lighter fluid and "Goo Gone"; (2) affixing stickers that co-defendants had ordered that concealed the labeling since most non-retail diabetic test strips contained labeling on their packaging that identified them as non-retail diabetic test strips, such as "mail order only" or "not for retail sale"; and (3) purchasing NDC numbers, bar codes, "Thank You" stickers, and other stickers from printing companies and using them to cover and mask the actual origin of the non-retail and foreign diabetic test strips.

Defendant GRAMA received and sold boxes of non-retail diabetic test strips at Physician Choice Pharmacy that were covered with "Thank You"; "Physician Choice Pharmacy"; NDC; and bar code stickers, which concealed or altered original information on the boxes. Co-defendants shipped boxes of non-retail and foreign diabetic test strips to Physician Choice Pharmacy that bore stickers with NDC numbers and bar codes that did not correspond to the actual boxes of diabetic

test strips that they had shipped.

Defendant GRAMA shipped packages of non-retail and foreign diabetic test strips, labeled as retail, to customers. Co-defendants created invoices containing false information for the sale of foreign diabetic test strips, or counterfeited their packaging to mask their origin, since foreign diabetic test strips did not contain NDC numbers. Defendant GRAMA was paid profits derived from the sale of these non-retail diabetic test strips through his company Ovey Inc.

Co-defendants sold non-retail and foreign diabetic test strips as if they were domestic retail diabetic test strips and billed the healthcare benefit plans through Pharmacy Benefit Managers as if the test strips were domestic retail diabetic test strips. Co-defendants submitted claims for reimbursement for diabetic test strips, to healthcare benefit plans through Pharmacy Benefit Managers including: OptumRx, CVS Caremark, Express Scripts, and Catamaran, seeking reimbursement as if they had provided more expensive retail test strips when they had provided less expensive non-retail and foreign test strips.

These events occurred in Broward County in the Southern District of Florid and elsewhere.

Respectfully submitted,
JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 10/14/21

By: _____
LAURENCE M. BARDFELD
ASSISTANT UNITED STATES ATTORNEY

Date: 10/13/21

By: _____
ROY KAHN, Esquire
ATTORNEY FOR DEFENDANT

Date: 10/13/21

By: _____
JASON GRAMA

3

DEFENDANT

4